UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WALTER THOMPSON, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 15-13956-LTS |
| COMMONWEALTH OF MASSACHUSETTS, | ) ) ) ) | |
| Respondent. | ) ) ) | |

MEMORANDUM AND ORDER ON PETITION FOR HABEAS CORPUS (DOC. NO. 1)

February 27, 2017

SOROKIN, J.

      Walter Thompson, on parole following a sentence of imprisonment served at the Massachusetts Correctional Institution at Cedar Junction in Walpole, Massachusetts, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he raises four challenges to his convictions and sentences. Doc. No. 1. The respondent has opposed the petition. Doc. No. 31. Because each of his claims is either meritless, procedurally defaulted, or not cognizable, Thompson's petition is DENIED.

I.      BACKGROUND

      In early 2011, following a jury trial in the Middlesex Superior Court, Thompson was convicted of distributing cocaine as a second or subsequent offense, and of doing so within a "school zone," both in violation of Massachusetts law. Commonwealth v. Thompson, 19 N.E.3d 419, 419 (Mass. 2014); Doc. No. 1 at 2; Doc. No. 31 at 2. He was sentenced to terms of imprisonment on each charge, and presently is on parole. Doc. No. 1 at 2; Doc. No. 31 at 2.

The charges against Thompson arose from a hand-to-hand transaction observed by two Cambridge police detectives, which the Supreme Judicial Court ("SJC") described as follows:

> On July 31, 2008, at approximately 10 P.M., [two] police Detectives . . . were conducting patrols in Cambridge. From their parked, unmarked vehicle, they observed . . . Michael Benoit and Lori Quigley sitting on a curb in the parking lot of a convenience store . . . . Both detectives were experienced in detecting street-level narcotics sales and were familiar with this parking lot from previous narcotics investigations. Benoit and Quigley were counting change in their open hands and looking furtively in all directions. Quigley stood and made a call at a pay telephone . . . . After about twenty seconds, she hung up the telephone and returned to the curb, where she and Benoit continued looking up and down the streets. Quigley paced as she did so. After about ten minutes, Thompson approached on bicycle . . . . He rode through the parking lot and, without stopping, exchanged a few words with Quigley. Thompson, with Quigley following him at a hurried pace, . . . stopped at a nearby house. As Quigley approached him, they looked back and forth at each other and all around in all directions. Quigley extended her hands toward Thompson, with one palm open and facing up, and the other in a closed fist. Thompson did the same, extending a closed fist toward Quigley's open hand and an open hand to her closed fist. Their hands made contact briefly, in a manner consistent with exchanging items between them. This exchange took place approximately 500 feet from school property. Quigley continued pacing, acting as though she was nervous. She returned to where Benoit was sitting at the curb. Quigley and Benoit walked at a quickened pace across the parking lot and . . . behind a fence at a nearby house, [and] Thompson got back on his bicycle and rode [away].
>
> The detectives radioed a description of Thompson[,] . . . got out of their car and . . . found Quigley and Benoit behind the house in an area that was well lit with floodlights. Benoit had in his hand an object that turned out to be a small plastic bag containing "crack" cocaine, and he was opening the bag. The detectives identified themselves and displayed their badges. Benoit quickly . . . dropped the bag. The detectives detained them and . . . retrieved the bag from where Benoit had dropped it. It was the cut-off corner of a plastic sandwich bag, consistent with packaging of approximately one-half gram of crack cocaine, which was typically valued between forty and sixty dollars. The detectives arrested Benoit and Quigley[,] . . . searched [them, and found] a glass tube of the type used to smoke crack cocaine . . . on Quigley's person.
>
> Other officers stopped Thompson[,] . . . searched [him, and found] . . . two folds of cash, one containing forty-five dollars and the other containing forty dollars, a cellular telephone and charger, a pack of cigarettes, and a cigarette lighter.

Thompson, 19 N.E.3d at 419-20.  In its review of Thompson's case, the Massachusetts Appeals Court ("MAC") noted the detectives who observed the transaction between Thompson and Quigley "never saw what, if anything, was exchanged."  Commonwealth v. Thompson, 988 N.E.2d 876, 876 (Mass. App. Ct. 2013) (unpublished opinion).  The MAC also specified that the plastic bag recovered from where Benoit had dropped it "contain[ed] .13 grams of crack cocaine."  Id.

At trial, both detectives testified that, as they approached Benoit and Quigley to arrest them, it appeared as though Benoit already had opened the small plastic bag containing the drugs.  S.A. Vol. II at Tab 5, pp. 15, 120.[1]  In addition, the Commonwealth called a narcotics expert, who testified that crack often was sold in half-gram or quarter-gram amounts, packaged in the corners of plastic baggies, with half-gram packages selling for between $40 and $60, and quarter-gram packages selling for $20.  S.A. Vol. II at Tab 6, pp. 47-48.  The expert further testified that it was not uncommon for the crack actually sold to weigh less than the promised or expected amount, due to the imprecise manner in which crack is made and prepared for selling (as compared to powder cocaine, which is easier to package and weigh more accurately), or due to a seller attempting to maximize profits by taking advantage of a buyer's desperation for drugs and/or lack of opportunity to inspect what is purchased at the time of the sale.  Id. at 48-51.

Thompson filed a timely direct appeal.  S.A. Vol. I at 5-6.  On June 7, 2013, in an unpublished decision, the MAC affirmed Thompson's convictions and sentences.  See generally Thompson, 988 N.E.2d 876.  Thompson successfully petitioned the SJC for further review, Commonwealth v. Thompson, 3 N.E.3d 80 (Mass. 2014) (table), but the SJC affirmed, albeit "on

---

[1] The respondent has filed a Supplemental Answer (cited herein as "S.A.") containing the state-court record in two bound volumes, hard copies of which are on file with the Clerk.  See Doc. No. 30.

somewhat different grounds" than the MAC. Thompson, 19 N.E.3d at 419. Thompson did not petition the Supreme Court for certiorari, nor did he pursue any collateral challenges to his conviction in state court via a motion for a new trial. Instead, he reiterated the same four claims he pressed on direct appeal in this timely pro se federal habeas petition. See generally Doc. No. 1. Those four claims are:

1. That his convictions were based "on insufficient evidence, speculation, and the piling of inference upon inference," id. at 6;

2. That the trial court violated his right to due process and improperly lessened the Commonwealth's burden of proof by using "the mailbox example" when answering a question from the jury regarding circumstantial evidence and reasonable inferences, id. at 8;

3. That the trial court improperly admitted a photograph of the alleged buyer despite the fact that its "prejudicial nature . . . greatly outweighed its probative value," id. at 9; and

4. That he should have benefitted from a subsequent change in state law reducing the radius triggering a "school zone violation," id. at 11.

Thompson's petition is fully briefed and ripe for resolution.

II.   DISCUSSION

As discussed in detail in the sections that follow, Thompson is not entitled to federal habeas relief. One of his claims is meritless, two are procedurally defaulted, and one presents a question of state law that is not cognizable here.

A. <u>Meritless Claim</u>

1. *Legal Standard*

Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In other words, state court decisions merit substantial deference. As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011); <u>accord</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011); <u>see</u> <u>Burt v. Titlow</u>, 134 S. Ct. 10, 15-16 (2013) (emphasizing "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court, and limiting relief to cases of "extreme malfunctions" by state criminal justice systems). If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. <u>Hardy v. Cross</u>, 565 U.S. 65, 72 (2011) (per curiam); <u>see</u> <u>Parker v. Matthews</u>, 567 U.S. 37, 132 S. Ct. 2148, 2149 (2012) (per curiam) (admonishing federal habeas courts not to "second-guess the reasonable decisions of state courts" (internal quotation and citation omitted)).

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). The state court is not required to cite, or even

have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf. Richter, 562 U.S. at 100 ("§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference).[2]

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles, 556 U.S. at 122. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550

---

[2] For a habeas petitioner to prevail under this standard, the state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court. Williams, 529 U.S. at 404-05; see Knowles v. Mirzayance, 556 U.S. 111, 122 (2009); see also Glebe v. Frost, 135 S. Ct. 429, 431 (2014) (emphasizing that "circuit precedent does not constitute 'clearly established Federal law'" for these purposes).

U.S. 465, 473 (2007); accord Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam) (emphasizing that a habeas court "may not overturn a state court decision . . . simply because the federal court disagrees with [it]"); Richter, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").

Finally, there is "a separate and exacting standard applicable to review of a state court's factual findings." Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007); see 28 U.S.C. § 2254(e)(1). When applying this strict standard, federal courts must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003); accord Teti v. Bender, 507 F.3d 50, 57 (1st Cir. 2007); Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).

    2.    *Claim 1*

Thompson's first claim attacks the sufficiency of evidence demonstrating he was engaged in distributing a controlled substance. He argues that the evidence did not support the Commonwealth's argument that he had received one of the two folds of bills in his possession when he sold Quigley the crack police recovered, because the amount of crack recovered had a street value less than the amount of money in either fold of bills. Doc. No. 1 at 17. Thompson further contends that the Commonwealth's case relied on unsupported inferences and speculation – regarding Quigley and Benoit allegedly counting and pooling their money (when they were seen counting change, but no change was recovered from Thompson), whether Quigley used the pay phone to call Thomspon's cell phone (when no cell phone records were offered confirming that), what transpired in the transaction observed by police (when no exchange of objects for

7

money was actually seen), and how the crack ended up in Benoit's possession (when police did not observe Quigley handing him anything). Id. at 18-20. Finally, in Thompson's view, the evidence "supported two inconsistent theories" – a drug transaction between Thompson and Quigley, or drugs that always were in Benoit's possession – "and therefore was not sufficient to support a finding of guilty beyond a reasonable doubt." Id. at 20.

The SJC considered and rejected Thompson's sufficiency claim on its merits, 19 N.E.3d at 420-21 – as had the MAC, 988 N.E.2d at 876 – and the respondent argues the state courts' rulings were consistent with clearly established federal law. Doc. No. 31 at 11-15. According to the SJC, "the jury had ample basis to convict Thompson of distributing cocaine." 19 N.E.3d at 420-21. The SJC recounted the evidence in detail, specifically citing the detectives' observation of a hand-to-hand transaction, Thompson's possession afterward of cash (but no drugs), and the "furtive behavior" of all participants, and found that it "requires no leap of conjecture to conclude that Thompson sold the crack cocaine to Quigley." Id. at 421; see also 988 N.E. 2d at 876 & n.3 (reflecting MAC's conclusion that the evidence, though "largely circumstantial," was sufficient to support Thompson's conviction, citing the observed hand-to-hand contact, the participants' furtive behavior, and the items recovered).

The SJC's determination was neither contrary to, nor an unreasonable application of, clearly established federal law. Because consideration of Thompson's claim is subject to the limited scope of habeas review, the Court "do[es] not ask, as [it] might on direct review of a conviction in federal court, whether the evidence was constitutionally sufficient. [It] ask[s], instead, whether the state courts' ruling that the evidence is constitutionally sufficient was itself 'unreasonable.'" Winfield v. O'Brien, 775 F.3d 1, 8 (1st Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1)). The relevant "clearly established Federal law, as determined by the Supreme

Court of the United States," § 2254(d)(1), for purposes of a sufficiency challenge is Jackson v. Virginia, 443 U.S. 307 (1979).  See Winfield, 775 F.3d at 7.  Under Jackson, a petitioner prevails on a sufficiency-of-evidence claim only if he demonstrates that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319.  Jackson requires "a federal habeas court faced with a record of historical facts that supports conflicting inferences [to] presume – even if it does not affirmatively appear in the record – that the trial of fact resolved any such conflicts in favor of the prosecution, and [to] defer to that resolution."  Id. at 9.

After summarizing the trial record in some detail, the SJC concluded that the Commonwealth's evidence, considered as a whole, was sufficient to support a finding that Thompson sold crack cocaine to Quigley.  This Court's own review of the record confirms that the SJC's decision was a reasonable one, and was fully consistent with the sufficiency principles articulated in Jackson.  Even if the SJC was wrong in suggesting that the drugs recovered after Benoit discarded them had "roughly the value of either cash fold found on Thompson," 19 N.E.2d at 421, the totality of the evidence would permit a rational trier of fact reasonably to infer that Thompson sold drugs to Quigley.

In particular, the record contains evidence that: the detectives involved were experienced in investigating street-level drug transactions, including at the precise location involved here; Benoit and Quigley appeared nervous before, during, and after the transaction; Thompson arrived at the location shortly after Quigley's observed telephone call and later was found to possess a cell phone; Thompson and Quigley engaged in a transaction after moving to a more secluded location; Benoit was opening a baggie of crack as the detectives approached, then attempted to discard it after the detectives identified themselves; Quigley possessed drug

9

paraphernalia; and Thompson had multiple folds of bills in amounts that corresponded, according to the expert testimony, to the average price of commonly-sold amounts of crack cocaine in that place at that time.[3]  From some combination of these facts, the jury inferred Thompson was guilty of distributing cocaine and, in doing so, resolved any conflicts in the evidence as to the amount of drugs sold and the amount of money paid in the Commonwealth's favor.  This Court is obligated to "defer to that resolution."  Winfield, 775 F.3d at 9.  Accordingly, Thompson is not entitled to habeas relief on his first claim.

      B.     Procedurally Defaulted Claims

          1.     *Legal Standard*

A state prisoner is not entitled to habeas relief in federal court unless he has first exhausted his available remedies in state court.  28 U.S.C. § 2254(b); see O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Mele v. Fitchburg Dist. Court, 850 F.2d 817, 819 (1st Cir. 1988).  To exhaust a claim, a petitioner must "fairly present" it to the state courts, "thereby alerting [the state courts] to the federal nature of the claim."  Baldwin v. Reese, 541 U.S. 27, 29 (2004); see O'Sullivan, 526 U.S. at 848; Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011).  Failure to exhaust federal claims in state court results in procedural default of those claims for habeas purposes if "the court to which the petitioner would be required to present his claims in

---

[3] Thompson makes much of the fact that the crack recovered, when tested, weighed only .13 grams – far less than the half ounce the Commonwealth hypothesized had been sold for $40 or $45.  The jury, however, reasonably could have reconciled this discrepancy in a manner that supported a finding of guilt in more than one way – for example, they could have concluded that some of the drugs spilled out of the bag before it was recovered (based on the detectives' testimony that the bag had been opened before Benoit dropped it), or they could have concluded that Thompson had represented the bag contained more crack than it actually did (based on the expert's testimony about imprecision inherent in packaging and selling crack, and the common practice of sellers purposefully short-changing their buyers to maximize profits).

order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

Even where a petitioner has fairly presented his federal claims in state court, procedural default occurs when the state court refuses to address such claims on the merits because of "a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman, 501 U.S. at 729); accord Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010); see Martinez v. Ryan, 566 U.S. 1, 9 (2012) ("[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."). The purpose of the procedural default rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court. Coleman, 501 U.S. at 732; see Martinez, 566 U.S. at 9 (noting such rules are "designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism").

Massachusetts law imposes "a routinely enforced, consistently applied contemporaneous objection rule." Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995); see Commonwealth v. Lavoie, 981 N.E.2d 192, 197 n.8 (Mass. 2013); Mass. R. Crim. P. 22. The rule is "firmly established and consistently followed," Martinez, 566 U.S. at 9, and the First Circuit repeatedly has held that it constitutes "an independent and adequate state procedural ground" that bars federal habeas review. Janosky, 594 F.3d at 44. Although Massachusetts appellate courts sometimes review claims for "miscarriage of justice" despite a failure to contemporaneously object, that sort of discretionary and limited review "does not in itself indicate that the court has determined to waive" the contemporaneous objection rule and consider the underlying claim on

its merits. Tart v. Massachusetts, 949 F.2d 490, 496 (1st Cir. 1991); accord Janosky, 594 F.3d at 44; Burk, 55 F.3d at 726 n.2. Federal courts will infer waiver of such a state procedural rule only if the state court makes it "reasonably clear that its reasons for affirming a conviction rest upon its view of federal law," rather than the relevant state procedural requirement. Doucette v. Vose, 842 F.2d 538, 540 (1st Cir. 1988).

A petitioner may obtain review of defaulted claims only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the[] claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; accord Martinez, 566 U.S. at 10; Janosky, 594 F.3d at 44. To demonstrate cause sufficient to excuse default, a petitioner must prove "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. "[I]neffective assistance of counsel, so severe that it violates the Sixth Amendment, may constitute cause to excuse a procedural default," but only if "the petitioner exhausted his ineffective assistance claim in state court." Janosky, 594 F.3d at 44 (citing Murray, 477 U.S. at 488-89).

To establish "actual prejudice," a petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 168 (1982); accord Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994); Avila, 938 F. Supp. 2d at 171.

If a petitioner seeks to establish a "fundamental miscarriage of justice" as an alternative to showing cause and prejudice, he must demonstrate "actual innocence." See Schlup v. Delo, 513 U.S. 298, 324 (1995); Janosky, 594 F.3d at 46. This requires more than a summary assertion

of innocence; the petitioner must present "new reliable evidence" of his innocence. Schlup, 513 U.S. at 324. Moreover, he must demonstrate that the new evidence would make it more likely than not that "no reasonable juror would find him guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 538 (2006); see Schlup, 513 U.S. at 316 (concluding that even a "concededly meritorious constitutional violation" is not sufficient to establish a miscarriage of justice and excuse procedural default absent new and compelling evidence of innocence).

      2.    *Claims 2 and 3*

Thompson's second and third claims challenge actions of the trial judge. One involves the trial court's response to a question from the jury during deliberations (Thompson claims the court offered an example of reasonable inferences that too closely mirrored the facts of his case, thereby suggesting what inference jurors should draw); the other relates to the admission of a photograph of Quigley, who did not testify at trial (Thompson claims her "haggard" appearance "as someone caught in the throes of drug addiction" was unduly prejudicial to him). Doc. No. 1 at 8-9, 21-22. Thompson, however, raised neither of these issues before the trial court, thus failing to preserve the claims for full appellate review as required under Massachusetts law. Burks, 55 F.3d at 716; see S.A. Vol. II at Tab 4, pp. 122-23 (admission of photograph without objection); id. at Tab 7, pp. 106-12 (discussion of response to juror question and incorporation of mailbox example without objection); see also S.A. Vol. I at 41-42, 47, 205, 211 (explicitly admitting waiver in Thompson's MAC & SJC briefs).

The SJC acknowledged Thompson's waiver of these issues based on his failure to comply with the state contemporaneous objection rule, reviewed the claims only for the "substantial risk of a miscarriage of justice," and summarily found none. 19 N.E.3d at 421-22; see also 988 N.E.2d at 876 (finding challenge to admission of photograph was unsupported by

any legal authority and that Thompson had not been prejudiced; finding no risk of miscarriage of justice from use of "familiar mailbox example" because example was not sufficiently similar to facts presented in the case).[4]

Thompson's failure to object to these alleged errors by the trial court at the time they arose renders his related federal claims procedurally defaulted. See Janosky, 594 F.3d at 44. The fact that the SJC reviewed the claims for miscarriage of justice does not excuse Thompson's waiver nor salvage the claims for purposes of federal habeas review. Id. Nothing in the SJC's decision supports an inference that it disposed of the relevant claims based on "its view of federal law," rather than the obviously applicable and explicitly invoked state procedural requirement (i.e., the contemporaneous objection rule). See Doucette, 842 F.2d at 540. Therefore, unless Thompson can show cause and prejudice for his default or demonstrate actual innocence, he is not entitled to federal habeas review of the claims. See Schlup, 513 U.S. at 324; Coleman, 501 U.S. at 750.

Nowhere in Thompson's submissions to this Court does he even acknowledge his default of these claims, let alone cite an "objective factor external to the defense" which caused him to waive the claims under state law. Murray, 477 U.S. at 488. He does not allege his trial counsel was ineffective in this or any other regard, nor has he exhausted any ineffectiveness claims in state court. Similarly, he has not shown, and the record does not support a finding, that the alleged missteps by the trial court "infect[ed] his entire trial with error of constitutional

---

[4] Although the MAC apparently excused (or did not detect) Thompson's failure to make a contemporaneous objection to the admission of Quigley's photograph, the SJC's decision – which did dispose of the claim on failure-to-object grounds – is the controlling state-court decision for present purposes.

dimensions."[5]  Frady, 456 U.S. at 168.  Finally, Thompson has neither asserted he is actually innocent of the charges in this case nor presented "new reliable evidence" of his innocence. Schlup, 513 U.S. at 324.  Under these circumstances, there is no basis for excusing his procedural default, and his defaulted claims are not subject to review by this Court.

    C.    Non-Cognizable Claim

        1.    *Legal Standard*

Habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); accord 28 U.S.C. § 2254(a).  It "is not an ordinary error-correcting writ" or a mere extension of a petitioner's direct appeals; it "exists to rescue those in custody from the failure to apply federal rights, correctly or at all."  Nadworny v. Fair, 872 F.2d 1093, 1096 (1st Cir. 1989).  Thus, "[f]ederal courts sitting in habeas must accept state court rulings on state law issues."  Rodriguez v. Spencer, 412 F.3d 29, 37 (1st Cir. 2005); see Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (emphasizing that "federal habeas relief is [not] available for an error of state law"); see also Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) ("Errors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised.").

"[T]o trigger [federal habeas] relief," where a state court has issued a ruling construing or applying only state law, "the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'"  Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  It

---

[5] Indeed, in the Court's view, the trial record supports the SJC's finding that neither alleged error created a risk of miscarriage of justice, as well as the MAC's more detailed conclusions that neither alleged error prejudiced Thompson.

is incumbent upon the habeas petitioner to frame such claims "in terms of violations of federal law," both in his federal petition and when exhausting the claims in state court. Cf. Kater, 459 F.3d at 61-62 (addressing federal questions arising from state law rulings where the questions were presented in federal constitutional terms throughout the relevant state and federal proceedings).

      2.    *Claim 4*

Thompson's final claim – as articulated here, and in his state-court filings – arises entirely under state law. See Doc. No. 1 at 11 (claiming entitlement to a change in a state statute without reference to federal law). That claim – asserting Thompson should benefit from a change in state law reducing the radius applicable to "school zone violations" – was addressed in terms of state law in Thompson's briefs on direct appeal, S.A. Vol. I at 199-205, and was resolved in terms of state law by both the MAC and the SJC, 19 N.E.3d at 421; 988 N.E.2d at 876. To the extent Thompson intended for his filings in this Court to raise some sort of federal claim involving retroactivity of the relevant change in state law,[6] such a claim was not fairly presented and exhausted on direct appeal, nor would it survive the requisite procedural default analysis discussed above. See § II.B, supra.

The SJC considered and rejected Thompson's state-law retroactivity claim. It cited its own prior decision interpreting the scope of the relevant state statute,[7] the state legislature's purpose in enacting the relevant statute, and the practical implications for the state criminal

---

[6] Reading such a federal claim into Thompson's petition would require the Court to go well beyond the rule that pro se pleadings must be liberally construed, and to manufacture for Thompson a federal dimension to his claim at which his petition does not even hint.
[7] In that decision, the SJC had analyzed the new provision pursuant to a state statute setting out rules of statutory construction applicable to Massachusetts state laws. See generally Commonwealth v. Bradley, 998 N.E.2d 774 (Mass. 2013).

16

justice system of adopting the view Thompson was urging. 19 N.E.2d at 421. In other words, Thompson's claim regarding application of the new "school zone violations" law is premised on a construct of state law – a state statute defining an aspect of state drug distribution crimes, the intent of the state legislature in enacting the statute as to the scope of its application, and the decisions of state courts construing the new law pursuant to state rules of statutory construction. This Court may not second-guess the SJC's considered and careful rulings on state-law issues such as this one. Rodriguez, 412 F.3d at 37.

Accordingly, Thompson's fourth claim is not cognizable on federal habeas review.

III. CONCLUSION

Because each of his claims is either meritless, procedurally defaulted, or non-cognizable, Thompson's habeas petition is DENIED.[8]

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[8] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. Thompson has cited no clearly established federal law, as enunciated by the Supreme Court, which the state courts considering his direct appeal either contravened or applied unreasonably. Moreover, two of his federal claims are doomed by his failure to comply with state procedural requirements which are routinely enforced and consistently applied, and one arises entirely under state law. For these reasons, which are more fully set forth above, Thompson is not entitled to a certificate of appealability.